UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN MORGAN | CIVIL ACTION |
| VERSUS | CASE NO. 12-1111 |
| OCHSNER CLINIC FOUNDATION | SECTION: "G"(2) |

### ORDER AND REASONS

Before the Court is Defendant Ochsner Clinic Foundation's ("Ochsner") Motion for Summary Judgment,[1] wherein Ochsner requests that summary judgment be entered against Plaintiff Kevin Morgan ("Plaintiff") on his claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). Having considered the motion, the memorandum in support, the response, the reply, the record, and the applicable law, the Court will deny the Motion for Summary Judgment.[2]

### I. Background

*A. Factual Background*

Plaintiff is a 45 year old African-American man. After working for Ochsner prior to Hurricane Katrina, Plaintiff was rehired as a Patient Care Technician ("PCT") to work the night shift at Ochsner's main campus in Jefferson, Louisiana in Ochsner's Oncology Department (hereinafter, "Oncology") in March or February of 2010.[3] In June of 2010, Plaintiff was notified by a document entitled "Occurrences"[4] that he was witnessed twice "yelling" on the telephone, which Ochsner deemed inappropriate, and informed him that another instance could result in corrective action.

---

[1] Rec. Doc. 20.

[2] *Id.*

[3] Rec. Doc. 20-3 at p. 1; Rec. Doc. 30 at p. 3.

[4] Rec. Doc. 20-4 at p. 34.

Plaintiff reviewed this document with the charge nurse responsible for supervising Plaintiff on the night shift, Ms. Ashley Labat, and signed it; however, Plaintiff's account of this incident maintains that it was a "verbal warning for being on the phone once with his teen aged boy, Kevin Lee Morgan."[5] Thereafter, Ochsner notified some employees, including Plaintiff, that they should look for other available positions with Ochsner, because Oncology would no longer be employing PTCs. Plaintiff applied for another job in Ochsner's Skilled Nursing Facility (hereinafter, "SNF"), and was offered a job by Ms. Jane Braendel, the unit director of the SNF.

Prior to his transfer to the SNF but after receiving the offer from Ms. Braendel, Plaintiff was involved in an incident in Oncology on August 24, 2010, which resulted in his suspension without pay for one day.[6] According to the corrective action form completed as a result of the incident, Plaintiff failed to perform a procedure, because he was asked to sit with another patient, and Plaintiff and a nurse were subsequently witnessed yelling at each other in close physical proximity.[7] Although Plaintiff was only suspended for one day, he did not work any subsequent shifts in Oncology after this incident.

On September 13, 2010, Plaintiff began working in the SNF for Ms. Braendel. However, Plaintiff worked the night shift, and was under the supervision of Ms. Jolene Cole, a nurse, and Ms. Cindy Peterson, a charge nurse.[8] On November 3, 2010, a final incident occurred which resulted in Plaintiff's termination, according to the corrective action form detailing the events surrounding the termination.[9] According to Plaintiff, he was cleaning a patient, when Ms. Cole came into the room to change a catheter. Plaintiff claims that the nurse became angry when Plaintiff asked her to

---

[5] Rec. Doc. 30 at p. 3.

[6] Rec. Doc. 20-4 at p. 35.

[7] Rec. Doc. 30-2.

[8] Rec. Doc. 30 at p. 3.

[9] Rec. Doc. 20-4 at p. 38.

2

wait until he was finished, and this exchange allegedly led to a confrontation between Plaintiff and Ms. Cole, although the specific details of the incident are disputed. Later that day, Ms. Braendel terminated Plaintiff, after taking statements from Ms. Cole, Ms. Peterson, and Ms. Tiffany Alexander, another PTC who was present.[10] According to Plaintiff, three other people at the nurses station witnessed the incident resulting in Plaintiff's termination, Ms. Zena Ruffin, Ms. Karen Holmes, and Ms. Mary Ann Burke-Lavaccari, but statements were not obtained from these individuals prior to Plaintiff's termination.[11]

On January 24, 2011, Michael Hulefeld, then CEO of Ochsner Medical Center in New Orleans, concluded that the termination was justified and supported by Ochsner policy, and that Plaintiff's "behavior was validated by witnesses who saw the events unfold," although the accounts of Plaintiff's alleged witnesses were not before him because Ochsner concluded according to Plaintiff–that "those individuals had not witnessed the event."[12]

### B. *Procedural Background*

Plaintiff filed this action against Ochsner[13] on May 1, 2012, claiming that his termination was caused by discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*.[14] Ochsner answered the complaint on July 6, 2012.[15] The parties did not consent to proceed before the magistrate judge, and therefore, the Court issued an order

---

[10] Rec. Doc. 20-3 at p. 7.

[11] Rec. Doc. 30 at p. 5.

[12] *Id.* at pp. 10-11.

[13] The complaint incorrectly named Ochsner Clinic Foundation as Ochsner Community Hospitals.

[14] Compl., Rec. Doc. 1.

[15] Answer, Rec. Doc. 6.

vacating the case referral to the magistrate.[16]  On February 11, 2013, Ochsner filed the instant Motion for Summary Judgment.[17]  After receiving an extension from the Court, Plaintiff opposed the instant motion on March 5, 2013,[18] and Ochsner filed a reply with leave of court.[19]

## II.  Parties' Arguments

### A.  *Ochsner's Motion for Summary Judgment*

Ochsner argues that summary judgment should be entered dismissing Plaintiff's claims, because Plaintiff cannot establish a *prima facie* case of race discrimination, and even if Plaintiff could establish a *prima facie* case, he cannot prove that Ochsner's stated reason for termination–multiple instances of aggressive behavior towards co-workers–was a pretext for unlawful race discrimination.

Ochsner explains that Plaintiff bears the burden of proving that he was the victim of the intentional discrimination.[20]  First, according to Ochsner, Plaintiff must establish a *prima facie* case of race discrimination by proving: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was discharged or subject to an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who were not members of the protected class.[21]  Oschner argues that Plaintiff has no evidence that "the misconduct for which he was discharged was nearly identical to that engaged in by a[n] employee [not within his protect class]

---

[16]  Rec. Doc. 11.

[17]  Rec. Doc. 20.

[18]  Rec. Doc. 30.

[19]  Rec. Doc. 33.

[20]  Rec. Doc. 20-3 at p. 13 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993)).

[21]  *Id.* (citing *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)).

4

whom [the company] retained," and therefore cannot establish the fourth element required to demonstrate a *prima facie* case of race discrimination and survive summary judgment.[22] Ochsner contends that although Plaintiff identifies Mr. Peter Haar as a similarly situated employee afforded different treatment, Plaintiff provides no evidence that Mr. Haar also allegedly engaged in threatening or aggressive behavior toward coworkers on multiple occasions, which is Ochsner's stated reason for terminating Plaintiff. Ochsner further contends that even if Plaintiff was terminated for failing to clean a patent, as Plaintiff claims, he presents no evidence that Mr. Haar was not as severely disciplined for the same type of behavior.[23]

Ochsner recognizes that once Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Ochsner to provide a "legitimate, nondiscriminatory reason for the adverse employment action."[24] Ochsner contends that "Plaintiff was discharged for two instances of acting threatening and aggressive towards co-workers."[25] Once Ochsner articulates a legitimate non-discriminatory reason for discharging Plaintiff by pointing to admissible evidence in the record,[26] Ochsner maintains that Plaintiff must "prove the defendant's proffered reason is not the true reason for the employment decision but rather is a pretext for intentional discrimination."[27] Ochsner reasons that Plaintiff cannot meet his burden on summary judgment to show that a reasonable factfinder could conclude that Ochsner's articulated reason for terminating Plaintiff is unworthy of

---

[22] *Id.* at 15 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

[23] *Id.*

[24] *Id.* (citing *Sandstand v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002)).

[25] *Id.* at p. 16.

[26] *Id.* at p. 14 (citing *Dees v. United Rentals N. Am.*, No. 11-0547, 2012 WL 1069183, at *3 (E.D. La. Mar. 29, 2012) (Brown, J.) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000))).

[27] *Id.* (citing *St. Mary's Honor Ctr.*, 509 U.S. at 507-08).

credence and merely a pretext for race discrimination.[28] According to Oschner, Plaintiff has produced no evidence other than "merely denying the reason" that Plaintiff was terminated for acting aggressively toward co-workers.[29] Moreover, Ochsner notes that Plaintiff admitted on several occasions that he had very little interaction with Ms. Braendel, although she was aware of the previous incident in Oncology.[30] Further, Ochsner explains that Ochsner Human Resources made the decision to terminate Plaintiff after Ms. Braendel took statements from the individuals involved.[31] Finally, Ochsner contends that because Ms. Braendel hired Plaintiff less than three months prior to terminating him, "the same actor inference applies such that there is an inference that discrimination was not the motive behind the decision to terminate [Plaintiff]."[32]

## B. *Plaintiff's Opposition*

First, Plaintiff claims that he has provided sufficient evidence to establish a *prima facie* case of race discrimination. Specifically, Plaintiff notes that he provided deposition testimony that "his Caucasian counterpart," Mr. Chris Majoria, was not terminated although Plaintiff performed his job better.[33] Additionally, Plaintiff asserts that Ochsner later replaced Plaintiff with a Caucasian male, Peter Haar, who Plaintiff alleges was "a similarly situated PTC who also had an altercation with [Ms. Braendel] for failing to clean a patient," and was not terminated.[34]

---

[28] *Id.* at p. 16.

[29] *Id.*

[30] *Id.*

[31] *Id.* at p. 17.

[32] *Id.*

[33] Rec. Doc. 30 at p. 12.

[34] Rec. Doc. 1 ¶ 8.

6

Second, Plaintiff claims that "[u]nder the analysis given in the Supreme Court case *Staub v. Proctor Hospital*, . . . Ochsner is liable for the discriminatory/retaliatory acts of Jolene Cole which were motivated by discriminatory or retaliatory animus."[35] Plaintiff avers that Ochsner is liable under Title VII based on *Staub*, if he can show "by either direct or indirect evidence 1) that Jolene Cole and /or Cynthia Peterson performed an act motivated by discriminatory animus, 2) that the act was intended to cause [Plaintiff's] termination, and 3) that the act was a proximate cause of the ultimate employment action."[36] Under this analysis, Plaintiff reasons that it was "precisely Cole and/or Peterson's race-mediated intention to get [Plaintiff] fired which actually and directly influenced [Mr. Hulefeld] to finalize Morgan's termination."[37] Plaintiff reasons that Ms. Braendel's decision not to interview Ms. Ruffin, Ms. Holmes, and Ms. Burke-Lavaccari, who were at the nurses station during the incident in the SNF, and Ms. Braendel's modification of her reason for the termination from Plaintiff "not wanting to clean a patient" to his exhibition of "aggressive behavior" caused Mr. Hulefeld to uphold Plaintiff's termination.[38] According to Plaintiff, his termination occurred "without any effective investigation or oversight from senior hospital administrators whatever" because, other than Plaintiff's statement, only Ms. Cole, Ms. Peterson, and Ms. Alexander's statements were in the record and available to Mr. Hulefeld when he made a decision to uphold the termination.[39] In support of this argument, Plaintiff references email communications after his termination which, according to Plaintiff, suggest that the review of Plaintiff's termination was "disorganized and uncertain."[40]

---

[35] Rec. Doc. 30 at p. 12 (citing 131 S.Ct. 1186 (2011)).

[36] *Id.* at p. 13 (citing 131 S.Ct. 1186).

[37] *Id.* at pp. 13-14.

[38] *Id.* at pp. 6-7.

[39] *Id.*

[40] *Id.* at pp. 8-10.

Third, Plaintiff contends that "[n]o additional evidence of discriminatory intent is required if a plaintiff's *prima facie* case raises a genuine issue of material fact regarding the employer's proffered reasons."[41]

Finally, Plaintiff asserts a "mixed motive" analysis should be applied to this case, because Plaintiff has shown "that an impermissible reason played a motivating part, in the challenged employment decision [which] shifts the burden of proof and persuasion to the defendant who must show by a preponderance of the evidenced [sic] that it would have made the same decision in the absence of the unlawful motive."[42]

## C. Ochsner's Reply

In reply, Ochsner argues that Plaintiff makes a number of statements in his opposition to the motion for summary judgment that are unsupported by evidence in the record and even contradicted by Plaintiff's own deposition testimony.[43] Moreover, Ochsner contends that many of Plaintiff's assertions are only supported by statements made in the verified complaint, and the Court should therefore not rely on the allegations that are expressly based upon Plaintiff's information and belief.[44]

Second, Ochsner notes that Plaintiff's complaint and testimony argue that he was treated differently and worse than Mr. Haar, a Caucasian PTC who was not terminated; however, in Plaintiff's opposition he makes no reference to Mr. Haar, and instead, argues that Plaintiff performed his work as well as another PTC, Chris Majoria.[45]

---

[41] *Id.* at p. 15.

[42] *Id.*

[43] Rec. Doc. 33 at p. 2.

[44] *Id.* at p. 5.

[45] Rec. Doc. 33 at pp. 8-9.

8

Finally, Ochsner contends that Plaintiff has no evidence that Ochsner's stated reason for terminating Plaintiff was merely a pretext. Specifically, Ochsner notes that one of Plaintiff's own witnesses stated that Ms. Cole and Ms. Peterson generally wanted to "rule the floor," but did not "have it in" for African-Americans.[46]

### III. Law and Analysis

#### A. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(a), when the pleadings and evidence demonstrate that no genuine dispute exists as to any material fact, the moving party is entitled to judgment as a matter of law, and summary judgment should be granted.[47] Only if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party is the dispute "genuine."[48] In determining if a dispute exists such that a jury could return a verdict in favor of the nonmoving party, the court is not to "make credibility determinations or weigh the evidence."[49] Instead, the court must view the evidence in the light most favorable to the nonmoving party.[50]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the

---

[46] *Id.* at p. 10.

[47] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[48] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc) ("If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[] is proper.").

[49] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55. *See also Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008) (stating that the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence").

[50] *Int'l Fidelity Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 679 (5th Cir. 2011).

evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[51] At that time, the nonmovant must come forward with competent summary-judgment proof of the existence of a genuine dispute regarding a material fact.[52] However, mere conclusory allegations are not competent summary-judgment proof, and are therefore insufficient to defeat a motion for summary judgment.[53] Likewise, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment proof.[54] Instead, the party opposing summary judgment must identify specific evidence in the record[55] and articulate the precise manner in which that evidence supports his claim.[56] Federal Rule of Civil Procedure 56 does not impose on the court a duty to "sift through the record in search of evidence" to support the nonmovant's opposition;[57] the burden to identify such evidence remains wholly on the nonmovant.[58]

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[59] The court need not consider disputed fact issues which are "irrelevant and unnecessary."[60] If the nonmovant fails to make a showing sufficient

---

[51] *See Celotex*, 477 U.S. at 325.

[52] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[53] *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

[54] *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

[55] Fed. R. Civ. P. 56(c); *Ragas*, 136 F.3d at 458.

[56] *Celotex*, 477 U.S. at 324; *Ragas*, 136 F.3d at 458; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[57] *Ragas*, 136 F.3d at 458. *See also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992).

[58] *Ragas*, 136 F.3d at 458.

[59] *Anderson*, 477 U.S. at 248.

[60] *Id.*

to establish the existence of a factual dispute regarding an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.[61]

## B. *Employment Discrimination*

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating based on sex, race, color, religion, and national origin in employment decisions, including firing.[62] In *McDonnell Douglas Corporation v. Green*, the Supreme Court set out a three-part burden shifting scheme for employment discrimination claims, the first step of which requires the plaintiff to set out a *prima facie* case of employment discrimination.[63] To establish a prima facie case of employment discrimination under Title VII, the plaintiff must allege:

> (1) membership in a protected group,
> (2) qualification for the position in question,
> (3) an adverse employment action, and
> (4) circumstances that support an inference of discrimination.[64]

Under Title VII, once the plaintiff establishes its *prima facie* case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action.[65] The defendant must point to admissible evidence in the record,[66] but the burden is one of production, not persuasion.[67] The defendant is not required to show that the employment decision was proper,

---

[61] *Celotex*, 477 U.S. at 322-23.

[62] 42 U.S.C. § 2000(e) *et seq.*, as amended.

[63] 411 U.S. 792 (1973).

[64] *See* 4-76 Employment Discrimination § 76.04.

[65] *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002).

[66] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[67] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

only that it was not discriminatory.[68] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for adverse employment action.[69] In fact, at this stage, the employer may succeed by proving that it would have taken the same action even had it not considered the unlawful factor.[70]

Once the employer has offered a legitimate, nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff. Under Title VII, the plaintiff must produce evidence that the employer's stated reason is merely pretext to cover up unlawful discrimination.[71] To show pretext, the plaintiff must either show disparate treatment or show that the proffered explanation is false or unworthy of credence.[72] To succeed at this third stage, a plaintiff "must do more than just dispute the underlying facts and argue that [the employer] made the wrong decision . . . ."[73] "Merely disagreeing with an employer's negative performance assessment is insufficient," and a plaintiff cannot survive summary judgment without an actual showing that the adverse employment action was the result of discrimination.[74]

---

[68] *LeMaire v. La. Dep't of Transportation & Development*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[69] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[70] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

[71] *Id.*

[72] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010).

[73] *LaMaire*, 480 F.3d at 391

[74] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). *See also Republic Ref. Co.*, 924 F.2d 93, 97; *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).

*C. Analysis*

The circumstances of this case require the Plaintiff to first establish that (1) he is a member of a protected class; (2) he was qualified for the position of PTC at Ochsner; (3) he was terminated; and (4) the circumstances surrounding his termination support an inference of discrimination. Here, the parties are only disputing the fourth element: whether the circumstances surrounding Plaintiff's termination support an inference of racial discrimination. The Court finds that at the summary judgment phase, where the Court should not weigh the evidence,[75] Plaintiff has put forth enough evidence to establish a *prima facie* case of race discrimination.

Plaintiff's own testimony and the allegations set forth in the complaint, the testimony of the witnesses identified by Plaintiff, and the limited investigation allegedly performed by Ochsner constitute sufficient evidence from which a jury could infer racial discrimination from the circumstances surrounding Plaintiff's termination. Plaintiff specifically contends that the actions of Ms. Cole and Ms. Peterson, for which Ochsner may be liable under the analysis set forth by the Supreme Court in *Staub*,[76] were motivated by racial discrimination because he is African-American. Plaintiff supports this argument with his own allegations and testimony and the testimony of two co-workers, Ms. Holmes and Ms. Ruffin, stating that Plaintiff did his job well and even better than his Caucasian counterpart, and yet was disfavored by Ms. Cole and Ms. Peterson.[77] Moreover, Plaintiff references the affidavit of Ms. Telina Slade, another of Plaintiff's co-workers, that states

---

[75] *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254-55. *See also Delta & Pine Land Co.*, 530 F.3d at 398 (stating that the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence").

[76] 131 S.Ct. 1186.

[77] Rec. Doc. 30 at pp. 3-4.

13

that Ms. Slade believed Ms. Cole and Ms. Peterson's treatment of Plaintiff was motivated by racial prejudice.[78] Although Ochsner contends that the Court should not rely on the affidavit of Ms. Slade because it is not based on "specific examples of discriminatory behavior by Ms. Cole or Ms. Peterson,"[79] it would be inappropriate to evaluate the weight of the evidence upon a motion for summary judgment.

Having found that Plaintiff has demonstrated a *prima facie* case of discrimination, the Court must evaluate whether there is a genuine issue of material fact regarding whether Ochsner's stated reason for terminating Plaintiff, namely two instances of aggressive and intimidating conduct toward coworkers, is merely a pretext for wrongful discrimination. Again, Plaintiff has adduced enough evidence to avoid summary judgment, by raising a disputed issue of material fact regarding the two incidents leading to Plaintiff's termination. In both instances, Plaintiff's account of the events leading to disciplinary action differs from Ochsner's account in material ways, and is supported, at least in part, by deposition testimony of Plaintiff's co-workers. Plaintiff's account of the incidents does not reveal that he was behaving aggressively toward coworkers. If, upon assessing the credibility of Plaintiff and the other witnesses, the trier-of-fact concludes that Plaintiff was not behaving in an aggressive or intimidating way, that may be strong evidence suggesting that the actions of Ms. Cole, Ms. Peterson, and by extension Ochsner, were motivated by racial discrimination.

---

[78] *Id.* at p. 6.

[79] Rec. Doc. 33 at p. 6.

### IV.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Motion for Summary Judgment[80] filed by Ochsner is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 18th   day of March, 2013.

                              **NANNETTE JOLIVETTE BROWN**
                              **UNITED STATES DISTRICT JUDGE**

---

[80]  Rec. Doc. 20.